J-S07004-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONYEAL C. BROWN | : | |
| | : | |
| Appellant | : | No. 1023 MDA 2023 |

Appeal from the Judgment of Sentence Entered June 22, 2023
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0004290-2018

BEFORE:   LAZARUS, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, P.J.:          **FILED: JULY 8, 2024**

Donyeal C. Brown appeals from the judgment of sentence, entered in the Court of Common Pleas of Dauphin County, following his conviction of one count of sexual assault.[1]  After review, we affirm.

The trial court summarized the factual history as follows:

Kierstyn Walker-Davis, the [c]omplainant, met [Brown] in the [f]all of 2015.  Walker-Davis was a member of Shiloh Church of God in Christ in Harrisburg and was heavily involved in its music ministry.  [Brown] was the Minister of Music for another church in the same community, and he and Walker-Davis came to know each other through their shared interest in the church music community.

Although they never entered a formal relationship, the parties were intimate by mutual consent on two [] occasions.  They were

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3124.1.

never consensually intimate again but maintained friendly contact over the next couple of years through their churches and various music programs.

In 2017, [Brown] joined Walker-Davis' church as its Minister of Music. Walker-Davis' participation in the church choir and the Praise Team caused her to have frequent interactions with [Brown]. They never discussed their prior brief relationship and kept their interactions professional.

On January 10, 2018, both parties attended choir and Praise Team rehearsals at the church. [Brown] told Walker-Davis he would come to her apartment on Hamilton Street after rehearsal for a visit. Walker-Davis found nothing unusual or inappropriate about [Brown] visiting her, and he arrived at her apartment sometime after 9:00 p.m.

They watched television and discussed the church music department and other general topics. The discussion never broached their past intimacy or anything sexual in nature. However, [Brown] eventually leaned towards Walker-Davis for a kiss and began pulling at her clothes. She declined the kiss and told [Brown] to stop. Initially, [Brown] stopped when instructed to do so, but resumed his efforts until rebuffed again. This pattern repeated itself several times.

Eventually, [Brown] stood up from the couch on which the parties were sitting and pulled Walker-Davis up by her clothes. When he had her on her feet, he used his body to push her towards her bedroom, trying to pull her clothes off as he pushed. Walker-Davis said no approximately five [] to six [] more times but [Brown] neither responded, acknowledged her refusals, nor ceased his assaultive behavior.

[Brown] pushed Walker-Davis into her bedroom, onto her bed, and laid on top of her with all his weight. At some point, Walker-Davis stopped trying to fight back because she feared what would happen if she became more aggressive in her resistance due to [Brown]'s size and persistence. [Brown] proceeded to engage in vaginal intercourse with Walker-Davis without her consent.

Walker-Davis did not call the police when [Brown] left her apartment very early the following morning. She feared if she brought the issue to the police, to the public eye, she would be

viewed negatively by the church community and would no longer be able to serve the church in her various capacities. This fear was exacerbated by [Brown]'s stature in the church community for such a long period of time.

A few weeks later, Walker-Davis delivered a letter to her [p]astor advising him that she was stepping down from her positions in the music department but did not explain her reasons for doing so. Shortly thereafter, Walker-Davis met with her [p]astor and told him exactly what had transpired between [her] and [Brown].

* * *

[] Pastor Scott told Walker-Davis that she should not be entertaining people in her home at night. He agreed that it was appropriate for her to "sit down" from her roles in the music ministry and said that he would speak to [Brown] about her allegations. Walker-Davis continued attending church for approximately the next two [] months but did not understand why [Brown] was being allowed to continue in his official capacities at the church and it was only she who had to "sit down." Disillusioned, Walker-Davis stopped attending church after Easter in 2018.

On May 5, 2018, after receiving encouragement from a friend, Walker-Davis reported [Brown]'s sexual abuse to the police.

Trial Court Opinion, 9/20/23, at 2-4 (citations omitted).

Brown was charged with sexual assault and rape.[2] From March 13-15, 2023, Brown was tried by a jury, after which he was acquitted of rape, but convicted of sexual assault. The trial court deferred sentencing and ordered the preparation of a pre-sentence investigation report. On March 21, 2023, the trial court entered an order directing the Sexual Offender Assessment Board (SOAB) to determine whether Brown was a sexually violent predator

---

[2] 18 Pa.C.S.A. § 3121(a)(1).

(SVP) as defined in the Sexual Offender Registration and Notification Act (SORNA).[3]

Ultimately, the SOAB concluded that Brown was not an SVP. On June 22, 2023, the trial court conducted a sentencing hearing and sentenced Brown to 2½ to 5 years' incarceration for his conviction. Brown did not file post-sentence motions.

Brown filed a timely notice of appeal[4] and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Brown now raises the following claims for our review:

> 1. Whether the trial court erred in allowing impermissible hearsay [testimony] from the complainant regarding what her pastor said, allowing admission of information that should not have been provided to the jury and which served only to prejudice the jury against [] Brown.

---

[3] 42 Pa.C.S. §§ 9799.10-9799.42.

[4] Brown filed a timely notice of appeal, in which he indicated that "the above-named defendant John Pandelios" appeals to this Court. *See* Notice of Appeal, 7/19/23, at 1. On August 1, 2023, this Court issued a Rule to Show Cause directing Brown to explain why his appeal should not be quashed as John Pandelios is not an aggrieved party. *See* Rule to Show Cause, 8/1/23, at 1 (citing Pa.R.A.P. 501). Brown filed a response, in which he indicated that the reference to "John Pandelios" in the body of the appeal was the result of a typographical error, and Brown requested leave to file an amended notice of appeal correcting his error. *See* Response, 8/3/23, at 1. On August 7, 2023, Brown filed an amended notice of appeal with the appropriate correction. *See* Amended Notice of Appeal, 8/7/23, at 1; *see also* Pa.R.A.P. 902(b)(1) (timely appeal is "subject to such action as the appellate court deems appropriate"). We accept Brown's amended notice of appeal pursuant to Rule 902(b)(1) and address the merits of his appeal.

2. Whether the imposition of SORNA registration without the jury's finding of future dangerousness constitutes an illegal sentence in violation of *Apprendi v. New Jersey*[, 530 U.S. 466 (2000)].

3. Whether the imposition of SORNA registration constitutes a punishment cognizable under the cruel and unusual punishment clause of the Eighth Amendment.

Brief for Appellant, at 5.

In his first claim, Brown argues that the trial court erred in permitting Walker-Davis to testify as to the hearsay statements of Pastor Scott that put blame onto Walker-Davis. *See id.* at 13-23. Brown argues that the Commonwealth elicited Pastor Scott's statement from Walker-Davis in an attempt to explain why Walker-Davis did not timely report. *See id.* at 18-19. Brown asserts that the timeliness of a sexual assault report is not an element of the offense, but a tool of the defense to rebut a complainant's credibility. *See id.* at 19. Additionally, Brown contends that the state of mind hearsay exception is not applicable to the statement because Pastor Scott's statements do "not constitute motive, intent, plan[,] or any emotional or physical condition." *Id.* at 20.

We adhere to the following standard of review:

The admissibility of evidence is a matter within the sound discretion of the trial court and will be reversed only where there is a clear abuse of discretion. . . . Evidence is admissible if it is relevant—that is, if it tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference supporting a material fact—and its probative value outweighs the likelihood of unfair prejudice.

*Commonwealth v. Clemons*, 200 A.3d 441, 475 (Pa. 2019) (citations omitted).

"Hearsay is a statement the declarant does not make while testifying at the current trial or hearing [and] is offered in evidence to prove the truth of the matter asserted." *Commonwealth v. Fitzpatrick*, 255 A.3d 452, 471 (Pa. 2021) (citation and quotation marks omitted). Generally, hearsay statements are inadmissible unless they satisfy an exception set forth in Pa.R.E. 803, pertaining to hearsay exceptions. *See* Pa.R.E. 802.

First, we must determine whether the statements Brown objected to constitute hearsay. Brown objected to the following exchange between Walker-Davis and the prosecutor at trial:

Q: And you told Pastor Scott what had happened?

A: Yes.

Q: Is it fair to say that [Pastor Scott] put some of the blame on you?

A: Yes.

N.T. Jury Trial (Day 1), 3/13/23, at 77.

We conclude that this exchange does not constitute hearsay. As stated above, hearsay is an out-of-court statement offered for the truth of the matter asserted. *See Fitzpatrick*, *supra*. Rather, the above excerpt from Brown's trial is more akin to Walker-Davis testifying as to **her personal impressions** of her conversation with Pastor Scott. *See* N.T. Jury Trial (Day 1), 3/13/23, at 77. Indeed, Walker-Davis did not point to any specific statements made by Pastor Scott, but rather generalized that she had a conversation with Pastor Scott and that the conversation left Walker-Davis with the impression that she

was partly to blame for the assault. *See id.* Consequently, we cannot conclude that these statements constitute hearsay in the first place. Thus, Brown's argument is misplaced, and we afford him no relief on this claim.

Next, in light of our Supreme Court's recent decision in *Commonwealth v. Torsilieri*, --- A.3d --- 2024 WL 2789201 (Pa. filed May 31, 2024) ("*Torsilieri II*"),[5] we address Brown's second and third claims together.

Brown argues that his registration under SORNA is illegal because it violates *Apprendi*. *See* Brief for Appellant, at 24-29. Additionally, Brown argues that SORNA subchapter H is punitive in nature and, therefore, is unconstitutional. *See id.* Similarly to *Torsilieri I*, Brown requests that we remand for an evidentiary hearing at which he would be permitted to present expert testimony regarding his claims. *See* Brief for Appellant, at 24-29. Brown asserts that his arguments are based upon *Torsilieri I* and *Torsilieri*

_____

[5] In 2020, our Supreme Court decided *Commonwealth v. Torsilieri*, 232 A.3d 567 (Pa. 2020) ("*Torsilieri I*"). In *Torsilieri I*, the Supreme Court vacated the trial court's determinations that SORNA subchapter H were unconstitutional and remanded for further evidentiary hearings regarding the alleged irrebuttable presumption and punitive nature of SORNA. *See id.* at 581, 83-84, 94. Upon remand, the trial court conducted hearings at which various experts testified and, again, the trial court concluded that SORNA subchapter H was unconstitutional in violation of the irrebuttable presumption doctrine and that subchapter H was punitive. *See Torsilieri II*, at *3-5. The Commonwealth appealed to the Supreme Court and our High Court reversed the trial court. *See id.* at *6, *26. In particular, the Court concluded that SORNA subchapter H did not violate the irrebuttable presumption doctrine and was **not punitive**. *See id.* at *26.

**II**.[6]  ***See*** Brief for Appellant, at 26-29.  Further, Brown's arguments rely upon the claim that SORNA subchapter H has created an unconstitutional irrebuttable presumption.  ***See id.*** at 27-28.

However, as indicated ***supra***, our Supreme Court recently issued its decision in ***Torsilieri II***, in which it held that SORNA subchapter H does not violate the irrebuttable presumption doctrine and **is not punitive**.  ***See Torsilieri II***, ***supra***.  Thus, Browns arguments, predicated upon claims that SORNA subchapter H is punitive and violated the irrebuttable presumption doctrine, must fail.  Accordingly, we conclude that we are bound by our Supreme Court's decision and affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/8/2024

---

[6] At the time Brown filed his Brief in this Court, ***Torsilieri II*** was still pending. However, Brown referenced ***Torsilieri II*** for the proposition that the constitutionality of SORNA subchapter H was still "open."  ***See*** Brief for Appellant, at 26-27.